IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 1:16-CV-00387 |
| v. | ) ) | COMPLAINT |
| HEALTH SYSTEMS MANAGEMENT, INC. d//b/a THOMASVILLE DIALYSIS, | ) ) ) | JURY TRIAL DEMAND |
| Defendant. | ) ) | |

NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 ("ADA") and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Julia Jones ("Jones") who was adversely affected by such practices. As alleged with greater particularity below, the Equal Employment Opportunity Commission ("EEOC" or "Commission") alleges that Heath Systems Management, Inc. d/b/a Thomasville Dialysis ("Defendant"), refused to provide Jones, a qualified individual with a disability, with a reasonable accommodation and discharged her in violation of the ADA.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which

incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§ 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of North Carolina.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. At all relevant times, Defendant, a Georgia corporation, has continuously been doing business in the state of North Carolina and the city of Thomasville, and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5), (7).

6. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Jones filed a charge with the Commission alleging violations of the ADA by Defendant.

8. On September 29, 2015, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that the ADA was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9. On April 13, 2016, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

11. As more fully described below, since around January 2013, Defendant has engaged in unlawful employment practices at its facility in Thomasville, North Carolina, in violation of Section 102 of Title I of the ADA, 42 U.S.C. § 12112 by failing to provide reasonable accommodations to Jones and discharging her because of her disability.

12. Jones became a Registered Nurse in or around 1998. Between approximately June 2004 and April 2006, Jones worked for Defendant as a Clinical Nurse Manager at its Thomasville facility in Thomasville, North Carolina. In 2005,

Jones became a Certified Dialysis Nurse. In or around 2006, Jones voluntarily ended her employment with Defendant to pursue another employment opportunity.

13. In or around 2010 or 2011, Jones was diagnosed with Stargardt Macular Degeneration ("Stargardt's disease"), a genetic eye disorder that causes progressive vision loss over time. Jones' physical impairment, Stargardt's disease, substantially limits her major life activity of seeing.

14. Stargardt's disease impairs Jones' color vision and sharp central vision, which she needs to perform tasks such as reading and identifying faces of patients. The vision loss Jones has experienced as a consequence of Stargardt's disease cannot be ameliorated by ordinary eye glasses or contact lenses. As a result of Stargardt's disease, Jones is legally blind. At all times relevant to the allegations in this complaint, Jones' vision was substantially impaired and/or Jones was legally blind.

15. In or around July 2012, Defendant rehired Jones to work as a Clinical Nurse Manger at its Thomasville facility. In or around January 2013, Jones asked Defendant to provide her with a larger computer monitor and certain software designed to aid her in reading on the computer screen. Jones informed Defendant that she needed these items to perform essential functions of her job, due to her vision impairment. Defendant provided Jones with a magnifying glass, but failed to provide Jones the larger computer monitor and software requested.

16.     On or about July 8, 2013, Jones was transferred to a Charge Nurse position. Between August and September 2013, Jones' Stargardt's disease advanced, causing substantial vision loss that impaired Jones' ability to provide direct patient care.

17.     On or about August 5, 2013, Jones called one of Defendant's human resources representatives and asked for an accommodation form. A few days later, Defendant's Regional Nurse Administrator and Director of Human Resources asked Jones about her disability and her need for accommodation.

18.     Shortly thereafter, the Regional Nurse Administrator and Director of Human Resources told Jones that effective immediately Jones was to have no further interaction with patients until she could be evaluated by a doctor. Jones was then assigned to file paperwork in Defendant's medical records department.

19.     On or about September 20, 2013, Jones was placed on medical leave of absence. Jones was told by Defendant's Clinical Nurse Administrator that unless she produced a fit for duty clearance from her doctor, she would not be allowed to return to work and would be discharged at the end of October 2013. Jones' leave of absence extended until her discharge.

20.     At the request of Jones, on or about September 24, 2013, a representative from the North Carolina Department of Health and Human Services Division of Services for the Blind ("Division of Services for the Blind") visited Defendant's Thomasville facility to evaluate the work environment, Jones' duties as a Charge Nurse, and whether an accommodation could assist Jones to perform her duties.

5

21. On or about October 1, 2013, a Vocational Rehabilitation Nursing Eye Care Consultant for the Division of Services for the Blind evaluated Jones' ability to perform essential job functions of the Charge Nurse position, including testing dialyzer strips, reading information on a computer, and reading fine print on medicine labels. The Nursing Eye Care Consultant determined that with the aid of a pocket magnifier Jones was able to successfully complete all of the above referenced tasks.

22. On or about October 8, 2013, Jones, a Rehabilitation Counselor, and an IT Specialist Assistive Technology Consultant for the Division of Services for the Blind met with Defendant's Regional Nurse Administrator, Clinical Nurse Administrator, and Clinical Nurse Manager at Defendant's Thomasville facility and demonstrated how Jones could administer direct patient care with assistive devices, including hand held and/or portable magnifying and monocular devices.

23. Jones demonstrated that by using hand held and/or portable magnifying and monocular devices, she could safely perform all essential duties of the Charge Nurse position, including checking dialyzer strips, monitoring the condition of patients at a distance, and administering medication. For example, while demonstrating the use of one of these assistive devices during the October 8 visit, Jones was able to read the blood pressure monitor of a patient on the other end of the 22 feet wide by 51 feet long bay and alert the Clinical Nurse Administrator of the patient's low blood pressure.

24. At the end of the October 8 visit, the Rehabilitation Counselor for the Division of Services for the Blind informed the Regional Nurse Administrator that the

Division of Services for the Blind would provide Jones with handheld and/or portable magnifying and monocular devices like those used during the October 8 visit at no charge to Defendant if Defendant made a request.

25. Following the October 8 demonstration of assistive devices, Defendant rejected the recommendations by the Division of Services for the Blind. Defendant never provided Jones with an opportunity to use any of the assistive devices offered by the Division of Services for the Blind, and never provided Jones with accommodation. Around the fourth week of October 2013, the Director of Human Resources informed Jones that Defendant had rejected the accommodations that had been suggested for Jones, and Jones could only return to work as a Charge Nurse if she submitted a fit for duty letter (a letter stating that Jones had the visual acuity to safely perform direct patient care) from a doctor.

26. On or about November 13, 2013, the Director of Human Resources sent Jones a letter stating that Jones' employment would be terminated effective November 20, 2013 unless Jones provided a letter from an Ophthalmologist, stating that Jones had the visual acuity that would allow her to safely perform direct patient care.

27. Jones could not produce the requested letter because her impairment is not reversible and cannot be ameliorated through the use of eyeglasses or contact lenses. Because Jones did not produce such a letter, Defendant terminated Jones's employment on November 20, 2013.

28. Jones is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).

29. Defendant refused to provide Jones, a qualified individual with a disability, with reasonable accommodation of visual assistive devices, including magnifying and monocular devices, in violation of the ADA.

30. Defendant's refusal to accommodate Jones culminated in the termination of Jones' employment with Defendant, in violation of the ADA.

31. The effect of the practices complained of above has been to deprive Jones of equal employment opportunities and otherwise adversely affect her status as an employee, because of her disability and request for accommodation.

32. The unlawful employment practices complained of above were intentional.

33. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Jones.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating against individuals because of their disabilities, including discrimination in hiring, firing, failing to provide reasonable accommodation to qualified individuals with disabilities, and any other employment practice which discriminates on the basis of disability.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, including disabilities that substantially impair the major life activity of seeing, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make whole Jones, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to rightful-place hiring and front pay.

D. Order Defendant to make whole Jones by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices describe above, in amounts to be determined at trial.

E. Order Defendant to make whole Jones by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional suffering, inconvenience, humiliation, loss of enjoyment of life, loss of civil rights, and other non-pecuniary losses pain, in amounts to be determined at trial.

F. Order Defendant to pay Jones punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted this the 27th day of April, 2016.

                                                  EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel
Equal Employment Opportunity Commission
131 M Street, NE
Washington, D.C. 20507

**/s/Lynette A. Barnes**
LYNETTE A. BARNES
(N.C. Bar No. 19732)
Regional Attorney

YLDA KOPKA
(Illinois Bar No. 6286627)
Supervisory Trial Attorney

**/s/Yolanda W. Brock**
YOLANDA W. BROCK (N.C. Bar No. 36651)
Trial Attorney
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Charlotte District Office
129 W. Trade St., Suite 400
Charlotte, NC 28202
Tel: (704) 954-6463

10

Fax: (704) 954-6412

**ATTORNEYS FOR PLAINTIFF**